Greg A. SPEARS, Appellant–Plaintiff,

v.

Timothy L. BRENNAN, Appellee–Defendant.

No. 49A02–0003–CV–169.

Court of Appeals of Indiana.

March 26, 2001.

Clifford W. Shepard, Consumer Protection Law Offices, Indianapolis, IN, Attorney for Appellant.

Thomas J. Grau, Carol A. Nemeth, White & Raub, Indianapolis, IN, Attorneys for Appellee.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Greg A. Spears challenges the trial court's entry of summary judgment in favor of attorney and debt collector Timothy R. Brennan on Spears' complaint alleging violations of the Fair Debt Collection Practices Act ("the FDCPA" or "the Act"), 15 U.S.C. § 1692 *et seq.* Spears presents four issues for our review, which we restate as:

1. Whether Brennan misrepresented the amount of attorney's fees to which he was entitled for the collection of Spears' debt in violation of 15 U.S.C. §§ 1692e(2)(B) and 1692f(1).

2. Whether Brennan's debt collection notice to Spears complied with 15 U.S.C. § 1692g(a).

3. Whether Brennan violated 15 U.S.C. § 1692g(a) when he scheduled two hearing dates on the debt collection claim and obtained a default judgment against Spears within the thirty-day debt validation period.

4. Whether Brennan violated 15 U.S.C. § 1692g(b) when he obtained a default judgment against Spears after Spears had notified Brennan in writing that he was disputing the debt and before Brennan had mailed verification of the debt to Spears.

We affirm in part, reverse in part and remand for further proceedings.

### FACTS AND PROCEDURAL HISTORY

On September 30, 1994, Spears obtained a loan from American General Finance, Inc. ("American General") in the amount of $2,561.59. The consumer credit contract executed by Spears contained the following collection costs provision:

> If you don't make any payment when it is due, you will pay us reasonable amounts permitted by law which we spend trying to collect what you owe or trying to take, foreclose or sell the security. *You will also pay our reasonable attorney's fees,* if referred to an attorney who is not our salaried employee, including any for appeals as permitted by law.

Record at 17 (emphasis added). When Spears stopped making the loan payments,

American General retained Brennan to collect the unpaid contract balance.

On October 24, 1996, Brennan sent a debt collection notice[1] to Spears that read:[2]

> RE: Creditor: American General Finance, Inc.
>
> Balance: $2,918.47 less applicable rebates
>
> Dear Mr. Spears:
>
> This communication is from a debt collector and is an attempt to recover a debt owed to the above named Creditor[;] any information obtained will be used for that purpose. Verification of the debt or the name and address of the original Creditor, if different than the above, will be provided upon written request to this office within thirty (30) days[;] otherwise the debt will be assumed valid.

Record at 33. On October 30, 1996, Brennan filed a notice of claim against Spears on behalf of American General in small claims court, seeking recovery of the $2,918.47 unpaid contract balance and $972.82 in attorney's fees, for a total judgment of $3,891.29. Brennan's notice of claim further stated:

> THIS IS AN ATTEMPT TO RECOVER YOUR DEBT OWED TO [AMERICAN GENERAL][;] ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. VERIFICATION OF THE DEBT, OR, THE NAME AND ADDRESS OF THE ORIGINAL CREDITOR, IF DIFFERENT THAN THE ABOVE, WILL BE PROVIDED UPON WRITTEN REQUEST TO THIS OFFICE WITHIN 30 DAYS[;] OTHERWISE THE DEBT WILL BE ASSUMED VALID. A REQUEST FOR INFORMATION WILL NOT RESULT IN A DELAY OF LEGAL PROCEEDINGS.

Record at 16. The small claims court set the debt collection claim for hearing on November 13, 1996, and in the notice of claim ordered Spears to appear on that date.

Spears retained attorney Clifford Shepard to represent him in the debt collection claim on November 12, 1996, on which date counsel moved to continue the hearing. The small claims court granted the motion for continuance, and Shepard subsequently agreed with Brennan by telephone to reschedule the hearing for November 27, 1996. Also on November 12, Shepard sent Brennan a letter informing him that Spears "disputes your debt collection-related allegations, denies the same, and demands strict proof and verification thereof. This dispute, denial, and demand are made in accordance with federal law." Record at 21.

On November 26, 1996, Shepard again moved to continue the hearing on grounds that Brennan, on behalf of American General, "has failed or refused to provide the requested validation and verification" of the debt despite Spears' demand of the same. Record at 22. The small claims court denied the motion for continuance as untimely and proceeded with the hearing on November 27, 1996. Neither Spears nor Shepard attended the hearing, and the trial court entered a default judgment against Spears in the amount of $3,891.29.

After learning that a default judgment had been entered against Spears on the debt collection claim, Shepard contacted Brennan, who agreed not to object to a motion to set aside the default judgment.

---

**1.** Also known as a dunning letter. *See* The American Heritage Dictionary 570 (3d ed.1996).

**2.** The record does not disclose when Spears received the debt collection notice.

No such motion was ever filed with the small claims court. Instead, Spears filed for bankruptcy and brought an action against Brennan seeking civil liability under the FDCPA. Brennan and Spears filed cross motions for summary judgment on the FDCPA action. The trial court denied Spears' motion for summary judgment and entered summary judgment in favor of Brennan, concluding that "[a] careful consideration of the record in this cause discloses that ... Brennan, without any issues of material fact[ ], has not violated the provisions of the [FDCPA.]" Record at 164. This appeal ensued.

### DISCUSSION AND DECISION

#### Standard of Review

■ Our analysis proceeds from the premise that summary judgment is a lethal weapon and that courts must be ever mindful of its aims and targets and beware of overkill in its use. *Bunch v. Tiwari,* 711 N.E.2d 844, 847 (Ind.Ct.App.1999). Summary judgment is appropriate only when the designated evidentiary material shows that there are no genuine issues of material fact and the moving party is entitled to a judgment as a matter of law. *Id.;* Ind. Trial Rule 56(C). When reviewing an entry of summary judgment, we stand in the shoes of the trial court. *Sizemore v. Templeton Oil Co.,* 724 N.E.2d 647, 650 (Ind.Ct.App.2000). We do not weigh the evidence but will consider the facts in the light most favorable to the nonmoving party. *Id.* All doubts as to a factual issue must be resolved in the nonmovant's favor. *Bunch,* 711 N.E.2d at 848. A trial court's grant of summary judgment is "clothed with a presumption of validity," and the appellant bears the burden of demonstrating that the grant of summary judgment was erroneous. *Id.* (citation omitted). Nevertheless, we must carefully assess the trial court's decision to ensure the nonmov-

ant was not improperly denied his day in court. *Id.*

■ This case also involves questions of statutory interpretation. The interpretation of a statute is a question of law reserved for the courts. *Wayne Metal Prods. Co., Inc. v. Indiana Dep't of Envtl. Mgmt.,* 721 N.E.2d 316, 317 (Ind. Ct.App.1999), *trans. denied.* Appellate courts review questions of law under a de novo standard and owe no deference to a trial court's legal conclusions. *Id.* If the language of a statute is clear and unambiguous, it is not subject to judicial interpretation. *Montgomery v. Estate of Montgomery,* 677 N.E.2d 571, 574 (Ind.Ct. App.1997). However, when the language is susceptible to more than one construction, we must construe the statute to determine the apparent legislative intent. *Id.*

■ We ascertain and implement legislative intent by giving effect to the ordinary and plain meaning of the language used in the statute. *Clifft v. Indiana Dep't of State Revenue,* 660 N.E.2d 310, 316 (Ind.1995) (citation omitted); *Newsom v. Friedman,* 76 F.3d 813, 819 (7th Cir.1996) (interpreting FDCPA and observing that "[t]he plain meaning of legislation should be conclusive."); *Matter of Voelker,* 42 F.3d 1050, 1051 (7th Cir. 1994) (noting that if statute is unambiguous, "we must enforce the plain meaning of the language enacted by Congress."). The statute is examined and interpreted as a whole, and while the language itself is scrutinized, this court refrains from overemphasizing a strict literal or selective reading of individual words. *Clifft,* 660 N.E.2d at 316 (citation omitted). Finally, this court is compelled to ascertain and execute legislative intent in such a manner as to prevent absurdity and difficulty and prefer public convenience. *Indiana State*

*Teachers Ass'n v. Board of School Comm'rs of City of Indianapolis,* 693 N.E.2d 972, 974 (Ind.Ct.App.1998). In so doing, we are required to keep in mind the objects and purposes of the law as well as the effect and repercussions of such a construction. *Id.*

### The FDCPA

In enacting the FDCPA, Congress stated its findings and declared the purposes of the Act as follows:

(a) There is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy.

(b) Existing laws and procedures for redressing these injuries are inadequate to protect consumers.

(c) Means other than misrepresentation or other abusive debt collection practices are available for the effective collection of debts.

\* \* \*

(e) It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.

*Ziobron v. Crawford,* 667 N.E.2d 202, 205 (Ind.Ct.App.1996) (quoting 15 U.S.C. § 1692), *trans. denied.* "The FDCPA is a broad statute that was designed to 'protect consumers from a host of unfair, harassing, and deceptive debt collection practices without imposing unnecessary restrictions on ethical debt collectors.'" *Blakemore v. Pekay,* 895 F.Supp. 972, 977–78 (N.D.Ill. 1995) (citations omitted) (also observing that Act was designed to reach "very broad spectrum of abuses").

Spears maintains that the trial court erred when it entered summary judgment in favor of Brennan on his complaint alleging violations of the FDCPA. In particular, Spears contends that: (1) Brennan misrepresented the amount of attorney's fees to which he was entitled for the collection of Spears' debt in violation of 15 U.S.C. §§ 1692e(2)(B) and 1692f(1); (2) Brennan's debt collection notice to Spears did not comply with 15 U.S.C. § 1692g(a); (3) Brennan violated 15 U.S.C. § 1692g(a) when he scheduled two hearing dates on the debt collection claim and obtained a default judgment against Spears within the thirty-day debt validation period; and (4) Brennan violated 15 U.S.C. § 1692g(b) when he obtained a default judgment against Spears after Spears had notified Brennan in writing that the debt was being disputed and before Brennan had mailed verification of the debt to Spears. We address each of Spears' contentions in turn.

### Issue One: Misrepresentation of Attorney's Fees

15 U.S.C. § 1692e provides in pertinent part:

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

\* \* \*

(2) The false representation of—

\* \* \*

(B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt.

15 U.S.C. § 1692e(2)(B). 15 U.S.C. § 1692f further provides:

A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

(1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

15 U.S.C. § 1692f(1).

In his consumer credit contract with American General, Spears agreed to pay "reasonable attorney's fees" incurred by the company for the collection of any unpaid contract balance. Record at 17. In the notice of claim subsequently filed on behalf of American General, Brennan sought $972.82 in attorney's fees, equal to one-third of the principal amount of Spears' $2,918.47 debt. The attorney's fees requested were added to the judgment against Spears for a total money judgment of $3,891.29. Brennan conceded in response to a request for admissions that he regularly seeks a one-third contingent fee for his debt collection services, and he admitted that he did not spend more than two hours preparing the notice of claim against Spears. Consequently, Spears asserts that Brennan violated the foregoing provisions of the FDCPA "by misrepresenting the amount of attorney's fees to which he was entitled." Brief of Appellant at 14. Spears argues that "[a]lthough ... Brennan believes multiplying the principal [unpaid contract] balance by one-third ... is a reasonable fee, ... this method [is] inappropriate." Brief of Appellant at 15.

Brennan responds that, regardless of whether a one-third contingent fee was in fact reasonable in the debt collection case, he did not "mispresent" the amount of attorney's fees to which he was entitled simply "by *requesting* attorney's fees in the amount of approximately one-third ... of the principal loan balance." Brief of Appellee at 6 (emphasis in original). Brennan points out that Spears "did not avail himself of the opportunity to challenge the reasonableness of the amount of [attorney's] fees by ... appealing the [small claims] court's judgment" on the debt collection claim and argues that Spears "cannot now challenge the award of attorney['s] fees by asserting a claim under the FDCPA." Brief of Appellee at 6. We agree with Brennan.

■ This court held in *Valparaiso Technical Inst., Inc. v. Porter County Treasurer*, 676 N.E.2d 416 (Ind.Ct.App. 1997), that a contingent fee agreement in a collection case that is the product of a bargain between the attorney and client is presumed to be reasonable as between them. *Id.* at 420 (citing *Waxman Indus., Inc. v. Trustco Dev. Co.*, 455 N.E.2d 376, 382 (Ind.Ct.App.1983)). We explained that where such a fee is subtracted from the amount recovered, the third-party debtor is unaffected by the fee agreement. *Id.* We noted, however, that it is an entirely different matter when the fee is added to the judgment against the debtor, as was the case here. Under such circumstances, the debtor has a direct pecuniary interest in how the fee is determined. *Id.* Thus, a one-third contingent fee that is reasonable when deducted from a client's recovery may be unreasonable when added to a

debtor's judgment. *Id.* As this court observed in *Waxman:*

> A contingent fee, even between an attorney and his client, is not enforceable unless it is founded upon a prior agreement. It then follows inexorably that a contingent fee contract of the obligee on an instrument with his attorney cannot be enforced against the party obligor who has merely agreed in the instrument to pay a "reasonable attorney fee" for the fundamental reason that the obligor has never agreed or has never even been consulted concerning the arrangement.

*Waxman,* 455 N.E.2d at 381. Accordingly, without "other objective evidence of reasonableness[,]" a contingent fee cannot be added to a judgment against a third party. *Valparaiso Technical Inst.,* 676 N.E.2d at 420–21; *see also Venture Enters. v. Ardsley Distr.,* 669 N.E.2d 1029, 1034 (Ind.Ct. App.1996) (holding that contingency fee agreements are not controlling as to third parties).

 Here, Brennan sought a one-third contingent fee of $972.82 for the collection of Spears' debt to American General, an amount "presumed to be reasonable" as between Brennan and American General.[3] *See Valparaiso Technical Inst.,* 676 N.E.2d at 420. Contrary to Spears' apparent position, Brennan was not prohibited as a matter of law from seeking a contingent fee, but he was required to present "other objective evidence of reasonableness" in order for the attorney's fees to be added to the judgment against Spears. *See id.* (observing that award of attorney's fees as percentage of money judgment against third party for collection of delinquent real property taxes is not per se unreasonable).

 Moreover, as Brennan suggests, "the determination of the reasonableness of the amount of attorney['s] fees requested in the notice of claim was a decision for the small claims court." Brief of Appellee at 7. The small claims court awarded the full amount of attorney's fees requested by Brennan, and Spears' subsequent claim of misrepresentation under the FDCPA is tantamount to a collateral attack on that award. *See Zsamba ex rel. Zsamba v. Community Bank, Abilene, Kansas,* 63 F.Supp.2d 1294, 1300 (D.Kan.1999) (concluding that debtors could have informed state court of ownership dispute of collateral prior to entry of default judgment in debt collection action; observing that plaintiffs were using FDCPA claim as collateral attack on state court order giving bank possession of and right to sell collateral to satisfy debt). If Spears had wanted to challenge the propriety of the small claims court's award of attorney's fees, he should have moved to set aside the default judgment on the debt collection claim or appealed from that determination. An action under the FDCPA is not the proper remedy.

We hold, therefore, that Brennan did not violate 15 U.S.C. §§ 1692e or f(1) when he merely requested $972.82 in attorney's fees in his debt collection claim against Spears. The trial court's entry of summary judgment on this issue is affirmed.

### Issue Two: Debt Collection Notice

 Next, we address Spears' claim that Brennan's debt collection notice failed to comply with 15 U.S.C. § 1692g(a). That provision governs the verification rights of consumers and requires debt collectors, at the outset, to send consumers a written notice containing the following information:

---

**3.** This is, of course, assuming that this contingency fee was "founded upon a prior agreement" between Brennan and American General. *See Waxman,* 455 N.E.2d at 381.

(1) the amount of the debt;

(2) the name of the creditor to whom the debt is owed;

(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C. § 1692g(a)(1)-(5); *Walker v. National Recovery, Inc.,* 200 F.3d 500, 501 (7th Cir.1999). Debt collection notices sent to consumers must not confuse them about the verification rights established by the FDCPA. *Walker,* 200 F.3d at 501; *Marshall–Mosby v. Corporate Receivables, Inc.,* 205 F.3d 323, 326 (7th Cir.2000) (noting that key consideration is that unsophisticated consumer is to be protected against confusion, whatever form it takes). Indeed, the Act "leaves no room for deviation in the language of the ... notice." *Jang v. A.M. Miller & Assoc.,* 122 F.3d 480, 482 (7th Cir.1997).

Here, Brennan's debt collection notice stated that "[v]erification of the debt ... will be provided upon written request to this office within thirty (30) days[;] otherwise the debt will be assumed valid." Rec-

ord at 33. Spears alleges that this notice violated 15 U.S.C. § 1692g(a) in three respects: (1) it failed to inform Spears that he could dispute a portion of the debt; (2) it failed to inform Spears adequately that he had thirty days from the date of receipt to dispute the debt; and (3) it imposed an invalid requirement that Spears dispute the debt in writing. We address each alleged violation in turn.

■■■ Spears initially contends that Brennan's debt collection notice violated 15 U.S.C. 1692g(a)(3) because it failed to inform Spears that he could dispute any portion of the debt. He cites the Ninth Circuit's decision in *Baker v. G.C. Servs. Corp.,* 677 F.2d 775, 778 (9th Cir.1982), where the court held that, based on the clear language of the statute, "Congress clearly required the notice to inform the debtor that he could dispute any portion of the debt." The *Baker* court concluded that absent a specific directive that a debtor may dispute not just the entire debt but any portion thereof, "[a] debtor who does owe a valid obligation to the creditor but could dispute finance charges, interest, or have some valid defense, might not be put on notice that he could dispute these additional charges." *Id.* Brennan, in turn, relies on the Sixth Circuit's opinion in *Smith v. Transworld Sys., Inc.* 953 F.2d 1025 (6th Cir.1992), for the proposition that it is "implicit" within the meaning of a notice advising a debt may be disputed "that the claim can be wholly, or partially challenged." *Id.* at 1028–29.

■■■ While recognizing these competing authorities, we need not decide whether a debt collection notice must explicitly inform the consumer he can dispute any portion of a debt within thirty days of receiving the notice because we conclude, as a matter of law, that Brennan's notice did not adequately advise Spears he could

dispute the debt to American General at all. In so doing, we observe that Brennan's debt collection notice is virtually identical to the notice in *Baker*. The *Baker* court declared that the notice "barely informs the debtor that he may even dispute the entire debt[,]" much less any portion thereof. *Baker*, 677 F.2d at 778. In particular, while both notices contain a statement that verification of the debt will be provided if requested in writing, as required by 15 U.S.C. § 1692g(a)(4), the only statement that refers remotely to a dispute regarding the validity of the debt, as required by 15 U.S.C. § 1692g(a)(3), is the sentence "otherwise the debt will be assumed valid." Record at 33; *see Baker*, 677 F.2d at 778. Further, before concluding that it was "implicit" in a debt collection notice that a claim can be wholly or partially challenged, the court in *Smith* specifically noted that the notice at issue there "adequately informs the reader that the debt must be disputed, if at all, within thirty days[.]" *Smith*, 953 F.2d at 1029. Unlike the notices in this case and in *Baker*, the notice in *Smith* unequivocally informed the debtor that "All portions of this claim shall be assumed valid unless disputed within thirty days of receiving this notice[.]" *Id.* In evaluating the tendency of language to confuse or mislead, we look not to the most sophisticated consumers but to the unsophisticated consumer. *Pettit v. Retrieval Masters Creditors Bureau*, 211 F.3d 1057, 1060 (7th Cir.2000).[4] The language of Brennan's debt collection notice was insufficient on its face to put Spears on notice that he could dispute the

validity of the debt, as required by 15 U.S.C. § 1692g(a)(3).

We also conclude that Brennan's debt collection notice did not adequately inform Spears that he had thirty days *from his receipt thereof* to dispute the validity of the debt and, thus, failed to comply with 15 U.S.C. § 1692g(a)(3). The debt collection notice advised Spears only that he must seek verification of the debt *"within thirty days* [;] otherwise the debt will be assumed valid." Record at 33 (emphasis added). It is unclear from the face of the notice whether Spears had thirty days from the date the notice was sent, October 24, 1996, or the date it was received,[5] to seek verification of the debt. *See Cavallaro v. Law Office of Shapiro & Kreisman*, 933 F.Supp. 1148, 1154 (E.D.N.Y.1996) (holding that notice advising debtor should dispute debt within thirty days from date of "this notice" rather than within thirty days of receipt of notice violated FDCPA). This facial confusion is compounded by the fact that Brennan's notice of claim, filed in small claims court on October 30, 1996, contains an identical advisement that "VERIFICATION OF THE DEBT ... WILL BE PROVIDED UPON WRITTEN REQUEST TO THIS OFFICE *WITHIN THIRTY DAYS* [;] OTHERWISE THE DEBT WILL BE ASSUMED VALID." Record at 16 (emphasis added).

Finally, Spears maintains that Brennan's notice advising him that "verification of the debt ... will be provided

---

4. Seventh Circuit jurisprudence dictates that practices which might violate the FDCPA must be viewed from the objective standard of an "unsophisticated debtor." *See Pettit*, 211 F.3d at 1060. An unsophisticated debtor is "not as learned in commercial matters as are federal judges, ... but neither is he completely ignorant." *Id.* An unsophisticated debtor is "uninformed, naïve, or trusting." *Id.* (cita-

tion omitted). The Seventh Circuit has rejected the "least sophisticated debtor" standard adopted by other circuit courts of appeal tying the debtor to "the very last rung on the sophistication ladder." *Id.* (citation omitted).

5. There is no evidence in the record of the date the notice was received.

upon written request" imposed an invalid requirement that he dispute the validity of the debt to American General in writing. Record at 33. Without deciding whether the FDCPA prohibits a debt collector from requiring a debtor to dispute the validity of a debt in writing,[6] we determine only that Brennan did not violate the FDCPA by advising Spears that verification of the debt would be provided if requested in writing. 15 U.S.C. § 1692g(a)(4) clearly requires that a debt collector's notice contain a statement that verification of the debt will be provided if requested in writing within thirty days of receipt of the debt collection notice. Brennan properly advised Spears of this verification right under the FDCPA.

We thus hold that Brennan's debt collection notice failed, as a matter of law, to comply with 15 U.S.C. § 1692g(a) and, specifically, with 15 U.S.C. § 1692g(a)(3). It did not adequately advise Spears of his right to dispute the validity of the debt or of his right to do so within thirty days from receipt of the debt collection notice. We therefore reverse the trial court's entry of summary judgment in favor of Brennan on this issue.

### Issue Three: Thirty-day Debt Validation Period

As discussed above, 15 U.S.C. § 1692g(a) requires a debt collector to send a debt collection notice stating, among other things, that unless the debtor disputes the validity of the debt within thirty days from receipt of the debt collection notice, the debt collector will assume the debt is valid. *Johnson v. Revenue Mgmt. Corp.*, 169 F.3d 1057, 1058 (7th

Cir.1999). This section of the FDCPA "obliges the collector to refrain from confusing the debtor by undercutting the required notice or implying a different obligation." *Id.* For example, an unelaborated demand that the debt be paid "immediately" would violate the FDCPA by implying that the debtor does not have thirty days to dispute the validity of the debt, "unless accompanied by additional reconciling language, such as that payment is due 'immediately' only when the debt is uncontested." *Id.* at 1059. Moreover, while "the creditor is entitled to file suit [against the debtor] whenever it chooses, ... progress in the suit may be delayed by verification." *Id.*

In this case, Brennan's notice of claim contained an order for Spears to appear in small claims court and answer to the debt owed American General on November 13, 1996, only twenty days after the debt collection notice had been sent. Spears argues that Brennan "overshadowed, undermined, and truncated" the FDCPA-required thirty-day debt validation period when he scheduled the hearing for November 13, 1996. Brief of Appellant at 27. Brennan responds that it was the small claims court, not he, that ordered Spears to appear at the hearing, and, therefore, that he could not have violated the FDCPA. We cannot agree with Brennan.

15 U.S.C. § 1692g(a) mandates in no uncertain terms that a debtor has thirty days to dispute the validity of a debt. Accordingly, Brennan was obligated under the Act not to infringe upon this thirty-day debt validation period. While it is true

---

6. There is competing authority governing this issue. *See Brady v. The Credit Recovery Co., Inc.*, 160 F.3d 64, 66 (1st Cir.1998) (interpreting related provision of FDCPA and holding that "ordinary usage of [the term] 'dispute' does not contemplate a writing."); *cf. Grazi*-ano v. Harrison, 950 F.2d 107, 112 (3rd Cir. 1991) (holding that "given the entire structure of section 1692g, subsection (a)(3) must be read to require that a dispute, to be effective, must be in writing.").

that the small claims court set the hearing on the debt collection claim for November 13, 1996, and ordered Spears to appear on that date, it was Brennan's duty, as a debt collector under the FDCPA, to obtain a hearing date outside the thirty-day debt validation period so as not to undercut Spears' verification rights. Having filed suit and required Spears to answer to the debt owed American General on November 13, 1996, Brennan violated the FDCPA by implying that Spears did not have thirty days to dispute the same. *See Johnson,* 169 F.3d at 1058.

■ Spears similarly asserts that Brennan undercut his verification rights under 15 U.S.C. § 1692g(a) when he rescheduled the small claims hearing for November 27, 1996, a date Spears alleges also falls within the thirty-day debt validation period. We observe, however, that the thirty-day debt validation period commences from the date of *receipt* of the debt collection notice. *See* 15 U.S.C. § 1692g(a)(3). Because Brennan sent the debt collection notice to Spears on October 24, 1996, the hearing, rescheduled thirty-four days after the debt collection notice was sent, could well have been scheduled outside the thirty-day debt validation period. If Spears received the debt collection notice on or before October 27, 1996, there could have been no undercutting of the thirty-day debt validation period and no violation of the FDCPA when Brennan scheduled the November 27, 1996 hearing. If, on the other hand, Spears received the debt collection notice after October 27, 1996, Brennan violated the FDCPA by scheduling the November 27, 1996 hearing on the debt collection claim and obtaining a default judgment against Spears on that date, thereby undercutting the thirty-day debt validation period.

■ Nevertheless, the record is devoid of any evidence indicating when Spears received the October 24, 1996 debt collection notice from Brennan. It is well settled that the party moving for summary judgment carries the burden of establishing that there is no issue as to any material fact and that he is entitled to judgment as a matter of law. *Avco Fin. Servs. Of Indianapolis, Inc. v. Metro Holding Co.,* 563 N.E.2d 1323, 1326 (Ind.Ct.App.1990). The moving party must fulfill these two requirements before any burden shifts to the nonmovant. *Id.* The nonmovant may rest upon his pleadings until the moving party establishes no genuine factual issue exists. *Id.* Brennan had the burden of showing that he scheduled the November 27, 1996 hearing and obtained a default judgment against Spears outside the thirty-day debt validation period. It was therefore necessary for him to prove the date on which Spears received the debt collection notice. Having failed to meet that burden, Brennan was not entitled to summary judgment. There remains a genuine issue of material fact as to whether the hearing and default judgment on November 27, 1996, undercut Spears' verifications rights under 15 U.S.C. § 1692g(a). The trial court's entry of summary judgment in favor of Brennan on this issue must be reversed.

■ Although we reverse the trial court's entry of summary judgment, in the interest of judicial economy we will address Brennan's contentions, which are likely to be raised again on remand. Brennan alleges that, even assuming he scheduled the November 27, 1996 hearing on the debt collection claim and obtained a default judgment within the thirty-day debt validation period, he cannot be found liable under the FDCPA because Shepard, Spears' attorney, agreed to the hearing date and because the default judgment was entered against Spears only after Spears and Shepard failed to appear. Stated oth-

erwise, Brennan suggests that by consenting to a hearing date within the thirty-day debt validation period and then failing to appear on that date to answer to the debt owed American General, Spears waived any future claim under the FDCPA. Brennan does not provide, nor have we found, any authority for the proposition that consumers may waive the protections of the FDCPA. To the contrary, several courts have addressed this very issue and determined that consumers may not waive their rights under the Act.

In *Oglesby v. Rotche*, No. 93–C–4183, 1993 WL 460841, at *10 (N.D.Ill. Nov.5, 1993), and again in *Blakemore v. Pekay*, 895 F.Supp. 972, 983 (N.D.Ill.1995), the district court addressed whether consumers could waive an FDCPA claim under 15 U.S.C. § 1692i, the venue section which mandates in part that a debt collector bring legal action on a debt only "in the judicial district or similar legal entity ... in which such consumer signed the contract sued upon[.]" In *Oglesby*, the debtors defended themselves in the debt collection suit rather than moving for a change of venue while in *Blakemore*, the debtor appeared in the debt collection proceeding and consented to judgment against him on the debt. In deciding that consumers cannot waive the protections afforded by 15 U.S.C. § 1692i, the Illinois district court concluded that requiring an unsophisticated consumer to "exercise his rights under the FDCPA immediately or lose them is contrary to the basi[c] premise of the Act, which is to protect unsophisticated debtors from debt collectors who may use the legal system, about which the consumer has little knowledge, to bludgeon them into submission." *Blakemore*, 895 F.Supp. at 983 (quoting *Oglesby*, at *10). The district court explained that 15 U.S.C. § 1692i "is ... more in the nature of a statutory tort which is completed upon the filing of an action in an improper venue." *Oglesby*, at *10.

We believe that 15 U.S.C. § 1692g(a) is also in the nature of a statutory tort which is completed once the debt collector undercuts the thirty-day debt validation period or implies the debtor does not have thirty days from receipt of the debt collection notice to dispute the validity of the debt. Spears was not required to invoke his rights under the FDCPA during the course of the debt collection claim or risk waiving those rights altogether. An FDCPA claim "has nothing to do with whether the underlying debt is valid. An FDCPA claim concerns the method of collecting the debt. It does not arise out of the transaction creating the debt[.]" *Azar v. Hayter*, 874 F.Supp. 1314, 1318 (N.D.Fla.1995) (refusing to find waiver of FDCPA claim as compulsory counterclaim to state court action on the debt because claim "does not arise out of the transaction creating the debt, and thus was not a compulsory counterclaim under state law in the action to collect the debt."), *affirmed*, 66 F.3d 342 (11th Cir.1995), *cert. denied*, 516 U.S. 1048, 116 S.Ct. 712, 133 L.Ed.2d 666 (1996). The Act makes debt collectors liable for various "abusive, deceptive, and unfair debt collection practices" *regardless* of whether the debt is valid. *McCartney v. First City Bank*, 970 F.2d 45, 47 (5th Cir.1992). Our analysis is further consistent with the well-settled principle that the FDCPA is a strict liability statute and that a consumer need not show intentional conduct by the debt collector to be entitled to damages. *See Russell v. Equifax A.R.S.*, 74 F.3d 30, 33 (2nd Cir.1996); *Bentley v. Great Lakes Collection Bureau*, 6 F.3d 60, 63 (2nd Cir.1993) (observing that degree of debt collector's culpability may only be considered in computing damages). In light of the foregoing authority and the "broad remedial purpose

of the FDCPA[,]" we conclude that Spears did not waive his verification rights under 15 U.S.C. § 1692g(a) when Shepard agreed to the November 27, 1996 hearing date and when he and Shephard failed to appear for the hearing. *See Blakemore,* 895 F.Supp. at 984.

Accordingly, we hold that Brennan violated 15 U.S.C. § 1692g(a) when he scheduled the November 12, 1996 hearing on the debt collection claim against Spears. For this reason, the trial court's entry of summary judgment in favor of Brennan is reversed. Additionally, we conclude that there remains a genuine issue of material fact as to when Spears received the October 24, 1996 debt collection notice from Brennan. We must therefore reverse the trial court's entry of summary judgment on Spears' claim that Brennan undercut his verification rights under 15 U.S.C. § 1692g(a) by scheduling the November 27, 1996 hearing and obtaining a default judgment against him on that date. Upon remand, we instruct the trial court to determine, in accordance with the principles set forth in this opinion, the date on which Spears received the October 24, 1996 debt collection notice and whether Brennan violated the FDCPA by scheduling the November 27, 1996 hearing on the debt collection claim and obtaining a default judgment against Spears within the thirty-day debt validation period.

### Issue Four: Failure to Cease Debt Collection

■ Finally, we address Spears' claim that Brennan violated 15 U.S.C. § 1692g(b) when he failed to cease collection of the debt after receiving Spears' written notification, within the thirty-day debt validation period, that Spears was disputing the debt. 15 U.S.C. § 1692g(b) reads:

> If the consumer notifies the debt collector in writing within the thirty-day peri-

od described in subsection (a) of this section that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, *the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector.*

15 U.S.C. § 1692g(b) (emphasis added). On November 12, 1996, nineteen days after the date of Brennan's debt collection letter, Spears' counsel Shepard sent Brennan a letter declaring that Spears "disputes your debt collection-related allegations, denies the same, and demands strict proof and verification thereof." Record at 21. As such, Brennan should have ceased his debt collection efforts immediately upon receiving that letter. Instead, Brennan proceeded to obtain a default judgment against Spears on the debt collection claim before he had mailed Spears the necessary verification and, thus, violated 15 U.S.C. § 1692g(b).

■ Brennan maintains, however, that there was no violation of the FDCPA because he "sent adequate verification of the debt [to Spears] in the October 30, 1996 notice of claim." Brief of Appellee at 13. Specifically, Brennan claims that a copy of the consumer credit contract between Spears and American General attached to the notice of claim provided sufficient verification of the debt within the meaning of 15 U.S.C. § 1692g(b). We cannot agree.

■ The contract in no way provides sufficient verification of the debt. A review of the document reveals that it identifies only the terms of Spears' loan, including a 17.99% annual interest rate

and the original loan amount of $2,561.59. The loan agreement contains no accounting of any payments made by Spears, the dates on which those payments were made, the interest which had accrued, or any late fees which had been assessed once Spears stopped making the required payments. Indeed, the existing unpaid contract balance at the time Brennan sent the debt collection notice was at least $350.00 more than the original loan amount. Therefore, Brennan violated 15 U.S.C. § 1692g(b) when he failed to cease collection of the debt by obtaining a default judgment against Spears after Spears had notified Brennan in writing that he was disputing the debt but before Brennan had mailed verification of the debt to Spears.[7] We reverse the trial court's entry of summary judgment in favor of Brennan on this issue.

## CONCLUSION

In sum, we affirm the trial court's entry of summary judgment in favor of Brennan on Spears' claim that Brennan falsely represented the amount of attorney's fees to which he was entitled for the collection of Spear's debt, because we find no violation of 15 U.S.C. §§ 1692e(2)(B) or 1692f(1).

We reverse the trial court's entry of summary judgment in favor of Brennan on Spears' claim that Brennan violated 15 U.S.C. § 1692g(a) when he scheduled the November 27, 1996 hearing on the debt collection claim and obtained a default judgment against Spears on that date.

Having found the existence of a genuine issue of material fact with respect to this issue, we remand to the trial court with instructions to determine, in accordance with the principles set forth in this opinion, when Spears received Brennan's debt collection notice and whether Brennan violated the FDCPA by scheduling the November 27, 1996 hearing and obtaining a default judgment against Spears within the thirty-day debt validation period.

We reverse the trial court's entry of summary judgment in favor of Brennan with respect to the remainder of Spears' claims as identified herein. Having found, as a matter of law, multiple violations of 15 U.S.C. §§ 1692g(a) and (b), we further remand to the trial court for a determination of damages in accordance with the FDCPA.[8]

Affirmed in part, reversed in part and remanded for further proceedings.

SULLIVAN, and BROOK, JJ., concur.

---

7. We observe additionally that, Spears did not waive his verification rights under 15 U.S.C. § 1692g(b) by failing to appear at the November 27, 1996 hearing. Like 15 U.S.C. §§ 1692g(a) and 1692i, 15 U.S.C. § 1692g(b) is in the nature of a statutory tort which is completed once the debt collector fails to cease his debt collection efforts after receiving written notification that a debtor is disputing the debt but before mailing verification of the debt to the debtor. *See Blakemore,* 895

F.Supp. at 984. As discussed previously, an FDCPA claim "has nothing to do with whether the underlying debt is valid. An FDCPA claim concerns the method of collecting the debt. It does not arise out of the transaction creating the debt[.]" *Azar,* 874 F.Supp. at 1318.

8. *See* 15 U.S.C. § 1692k (governing civil liability under the Act).